IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LINDA K. STINNETT                                                                                      PLAINTIFF

v.                                      Civil No. 12-2124

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Jasmine Johnson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II Of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.   Procedural Background:**

The Plaintiff filed her application for DIB on June 30, 2009. alleging an onset date of August 15, 2008, due to diabetes, neuropathy, cardiomegaly, chronic obstructive pulmonary disease ("COPD"), hysterectomy, and back and hip problems. Tr. 151, 167-168. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 59-60, 67-68. An administrative hearing was held on June 29, 2010. Tr. 20-58. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 46 years old and possessed a tenth grade education. Tr. 30, 134, 157, 188. She had past relevant work ("PRW") experience as an auditor/parts inspector. Tr. 17, 32, 36-37, 136, 152, 159-166, 191.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

AO72A
(Rev. 8/82)

On October 20, 2010, the ALJ found Plaintiff's diabetes, cardiomegaly, COPD, hypertension, arthritis, degenerative disk disease ("DDD"), and obesity to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 13. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work except no balancing, no exposure to unprotected heights, and no climbing ladders, ropes, or scaffolds.  Tr. 13-16.  With the assistance of a vocational expert, the ALJ found Plaintiff could perform work as lamp shade assembler, slide fastener, chain assembler, and plastic design applicator.  Tr. 17-18.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on April 9, 2012.  Tr. 1-3.  Subsequently, Plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  ECF No. 5.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF Nos. 5, 6.

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary

## II.    **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible

to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion:**

In her appeal brief, Plaintiff raises the following three points of error: 1) the ALJ erred in failing to properly evaluate her obesity in light of the evidence in the record; 2) the ALJ did not properly assess

the credibility of her subjective complaints; and, 3) the ALJ improperly based his RFC determination upon an unacceptable medical source.

### A. Obesity:

Social Security Ruling ("SSR") 02-1p provides guidance for evaluating obesity. It states that obesity can cause a limitation of function. *See* SSR 02-1p, at www.westlaw.com (Last accessed 07/08/2013). The functions likely to be limited depend on many factors, including where the excess weight is carried. *Id*. However, an individual may have limitations in any of the exertional functions such as *siting,* standing, walking, lifting, carrying, pushing, and pulling. *Id.* Obesity may also affect the ability to do postural functions, such as climbing, balancing, stooping, and crouching. *Id*. SSR 02-1p further explains that the combined effects of obesity with other impairments may be greater than might be expected without obesity providing "[f]or example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone."

In the present case, the ALJ acknowledged that Plaintiff suffered from morbid obesity, with a mass body index of 48.28. He also discussed the evidence of record, considering her impairments in combination, rather than singularly. It is clear to the undersigned that the ALJ properly considered Plaintiff's obesity when concluding that she could perform only sedentary work involving no balancing, no exposure to unprotected heights, and no climbing ladders, ropes, or scaffolds. And, we can ascertain no additional limitations that were imposed by the combination of her obesity and other impairments.

### B. Subjective Complaints:

Plaintiff next asserts that the ALJ failed to properly consider her subjective complaints, summarily stating that her subjective complaints were only credible to the extent they supported his RFC assessment. In assessing the credibility of Plaintiff's subjective complaints, the ALJ was required to consider all of the evidence relating to Plaintiff's subject complaints, including evidence presented by third parties that relates to: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of his

pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of his medication; and, 5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While the ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, he may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

Contrary to Plaintiff's argument, the ALJ found the following factors weighed against her credibility: work after alleged onset date, receipt of unemployment benefits, lack of objective evidence, medication effectiveness, conservative nature of treatment, and daily activities. The ALJ noted that the Plaintiff had worked after her alleged onset date.[2] While this work did not amount to substantial gainful activity, it did show that Plaintiff was capable of performing some work-related activities. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). During the relevant time, Plaintiff also received unemployment benefits, which is facially inconsistent with her assertion that she was unable to work due to her impairments.[3] *Salts v. Sullivan,* 958 F.2d 840, 846 n. 8 (8th Cir. 1992).

The ALJ also noted the lack of objective evidence to support her alleged functional limitations, as well as the evidence suggesting that the medications prescribed to treat Plaintiff's symptoms were relatively effective. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider); *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be

---

[2]Plaintiff alleged an onset date of August 15, 2008. On August 11, 2008, she underwent a hysterectomy. After eight weeks of medical leave, she returned to work on October 14, 2008. In December 2008, she took a "voluntary" lay-off, due to her alleged impairments. On June 15, 2009, Plaintiff returned to work, but was only able to work for approximately one week before resigning. Tr. 33-36.

[3]Plaintiff received unemployment benefits through June 2009.

considered disabling). In August 2009, Plaintiff reported that her chest pain had become occasional twinges of pain, lasting only seconds. Tr. 363-364. And, she reported no muscle or joint problems.

In September 2009, Nurse Pham-Russell, working under the direction of Dr. Stephanie Frisbie, conducted a general physical examination of the Plaintiff, noting a negative straight leg raise test bilaterally, normal limb function, a normal range of motion in all areas with no muscle atrophy, spasm, or sensory abnormalities. Tr. 271-274. Plaintiff exhibited a normal gait and was able to walk on her heel and toes, squat and arise from a squatting position, grip things bilaterally, hold a pen and write, touch fingertips to palms, oppose thumb to fingers, and pick up a coin. And, x-rays of her lumbar spine conducted at this time revealed degenerative disc disease with facet changes and sclerosis of the right sacroiliac joint likely related to sacroilitis. Tr. 270. Accordingly, Nurse Pham-Russell concluded that Plaintiff had only moderate lifting, excessive bending, and stooping limitations.

On September 17, Dr. Stephen Manus noted improvement in Plaintiff's lipids and her blood sugar. Tr. 361-362. And, on September 24, 2009, Dr. Manus noted that Plaintiff was asymptomatic with nuclear stress test results revealing an ejection fraction rate of 53%. Tr. 367-371.

In November, Plaintiff admitted that the Celebrex prescribed by Dr. Deneke helped her hip pain. Tr. 337-339. An exam revealed no hip tenderness with palpation or ambulation. However, pain was elicited by active internal rotation. Her pain continued in January 2010, and although it remained somewhat responsive to Celebrex, Dr. Rodney McDonald prescribed Naproxen. Tr. 340-344. At this time she exhibited a normal gait and stance, and Dr. McDonald concluded that her hip pain was actually radiating from her lower back. In February, Dr. Manus noted a normal exam with some discomfort in the hips upon standing. Tr. 358-359. X-rays of her lumbar spine showed only mild degenerative changes, while x-rays of her sacrum and coccyx revealed no acute abnormalities. Tr. 365.

In March 2010, Plaintiff reported to Dr. Deneke that her hip pain was responsive to Aleve and heat. Tr. 350-358. He indicated that a hip x-ray performed in 2004 showed some mild spurring in the

right greater trochanter, but noted that she had a good range of motion in her hips, knees, ankles, feet, and back. In May 2010, Plaintiff was treated for a migraine headache. Tr. 381-386. Dr. McDonald also noted that her blood pressure was slightly elevated, which he felt was caused by the headache. Plaintiff was prescribed Prochlorperazine Maleate and Zyrtec.

A repeat echocardiogram conducted in December 2010 revealed an ejection fraction rate of 61% with a slight increase in the left atrial size, but a decrease in the right ventricular size. Otherwise, there was no appreciable change noted.

After reviewing the evidence, it seems clear that the Plaintiff does experience some degree of pain associated with her impairments. However, the issue is not the existence of pain, rather whether the Plaintiff's experience of pain precludes substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991). And, it is the opinion of the undersigned that Plaintiff's medical records do not support the level of impairment alleged by the Plaintiff.

Also of significance is the fact that the Plaintiff effectively treated her alleged symptoms with routine and conservative treatment such as oral medication, diet, and physical therapy, requiring no hospitalizations or surgical intervention. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (claimant failed to show disability because ailments are, or can be, controlled by medication and diet). Further, in spite of numerous advisements to lower her caloric intake, it appears that Plaintiff was noncompliant, continuing to eat a diet high in fat, cholesterol, salt, and sugar. Tr. 377, 383, 387-388. *See* 20 C.F.R. § 404.1530 (1990) ("To receive Social Security disability benefits, a claimant must follow treatment prescribed by his physician if such treatment will restore his ability to work.") . .

Plaintiff's activities of daily living also contradict her contention of disability. On July 26, 2009, Plaintiff completed an Adult Function Report. Tr. 169-176. She indicated that she could care for her personal hygiene, prepare simple meals, make her bed, do the dishes, wash laundry, clean, drive a car, ride in a car, shop in stores for food and cleaning supplies, pay bills, count change, use a

AO72A
(Rev. 8/82)

checkbook/money order, watch television, read the newspaper, attend church every other week, watch movies, and visit with her children and her parents. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Accordingly, we find that the ALJ properly considered the evidence concerning Plaintiff's subjective complaints and discredited her for valid reasons.

    C.    **RFC Assessment:**

Lastly, Plaintiff contends that the ALJ erred in relying on the results of a general physical examination conducted by a nurse practitioner. Specifically, she argues that a nurse practitioner is not an acceptable medical source, and her examination is not entitled to substantial weight. According to the social security regulations, only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, provide medical opinions, and be considered treating sources. 20 C.F.R. §§ 404.1527(a)(2), (d) and 416.927(a)(2), (d) (2007). Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. § § 404.1513(a), 416.913(a) (2007). Other sources, including nurse-practitioners, however, may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *see also* SSR 06–3p.

Here, the ALJ used the nurse practitioner's evaluation to determine the severity of, rather than the existence of, Plaintiff's medically determinable impairments. And, as such, used it properly. We also note that the nurse practitioner's evaluation was endorsed by a medical doctor, entitling it to treating

source weight. *See Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir.2006) (allowing nurse practitioner, who was working as a part of a medical team with a doctor, to be treated as a treating source). Accordingly, we can find no error in the ALJ's reliance on the nurse practitioner's evaluations.

Plaintiff also asserts that the ALJ's RFC assessment is erroneous. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

Contrary to the Plaintiff's allegations, the ALJ concluded that Plaintiff could perform a reduced range of sedentary work, rather than light work. And, although the ALJ did not find Dr. Stephen Manus' assessment to be entitled to significant weight because it was not based on objective and/or clinical observations and is internally inconsistent, some of his assessment was adopted by the ALJ. Tr. 372-374. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (ALJ may discount or even disregard opinion of treating physician where other medical assessments are supported by better or more thorough medical

9

evidence, or where treating physician renders inconsistent opinions that undermine the credibility of such opinions). For instance, Dr. Manus concluded that Plaintiff could lift 10 pounds; stand, walk, or sit for 4 hours each; and, push/pull without limitations. However, he also indicated that Plaintiff could not sit/stand/walk in combination for 8 hours in an 8-hour workday. He determined that Plaintiff could reach in all directions, handle, finger, grip, and feel for 6 hours per 8-hour workday, but then indicated that Plaintiff had significant limitations in the ability to reach/push/pull bilaterally in the upper extremities. Further, Dr. Manus specifically stated that Plaintiff could work an 8-hour work day, but stated he could not perform part-time work activities of any nature for more than 10 hours in a 40 hour work week. Given these inconsistencies, we find that the ALJ properly discredited this assessment.

We also note that Dr. James Armstrong testified as a medical expert at the administrative hearing. Tr. 22-28. After reviewing Plaintiff's medical records, he was of the opinion that Plaintiff could perform sedentary work with no climbing of ladders, ropes, and scaffolds, and no work near unprotected heights.

After reviewing the entire record, the undersigned is of the opinion that the ALJ's RFC assessment is supported by substantial evidence, and the case must be affirmed. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (The ALJ determines the residual functional capacity upon the totality of the evidence, and the finding is proper if some medical evidence supports it.); *see also Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002)

### V. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

10

DATED this 8th day of July 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE